## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECORE INTERNATIONAL, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-6843 |
| PAUL DOWNEY *et al.* | : | |

### MEMORANDUM

**SURRICK, J.**                                          **SEPTEMBER 10, 2020**

Presently before the Court is Plaintiff Ecore International, Inc.'s Motion *in Limine* No. 8 (ECF No. 99), which seeks to exclude any evidence related to the falsity or misleading nature of Plaintiff's advertising. For the following reasons, Plaintiff's Motion will be denied.

## I.     BACKGROUND

Plaintiff's Motion *in Limine* is one of many submitted by the parties. It deals with a relatively narrow aspect of this case, which involves approximately 20 claims and counterclaims related to a hotly contested commercial dispute between the parties. At issue in this Motion are Defendant Pliteq, Inc.'s Counterclaims against Plaintiff for false advertising, in violation of the Lanham Act, and common law unfair competition. (Counterclaims, Counts IX-XI, ECF No. 50.) Pliteq alleges that in connection with Plaintiff's advertising and promotional activities, Plaintiff made false and misleading statements about Pliteq's "GenieMat" products and its own "QT" products, which are competing sound dampening products. (*Id.* ¶¶ 166-93.) Specifically, according to Pliteq:

- "Ecore has alleged that its QT products are equivalent to Pliteq's products as to quality, performance, and testing, at a time when these products were not equivalent." (*Id.* ¶ 168.)

- "Ecore has, in another instance, made false and misleading statements regarding the cleaning and processing of Pliteq's products, wrongly implying that Pliteq's

products use a rubber cleaning and processing method involving sulfur, and that the products accordingly have an unpleasant odor." (*Id.* ¶ 169.)

- "Ecore has alleged that it originated the new method of using two layers of floor underlayment, when this is not the case." (*Id.* ¶ 178.)

Plaintiff contends that to prove its counterclaims on Counts IX-XI, Pliteq must proffer an expert who can opine on the falsity of Plaintiff's statements and whether those statements are likely to confuse consumers. Pliteq disagrees and asserts that it can meet its burden of proof with lay witnesses, including Defendant Paul Downey, who has extensive experience in the sound insulation field and can testify as to these issues based on his personal knowledge and observations.[1] Pliteq has not identified Downey as an expert in this matter, nor has it identified any other witnesses who will offer an expert opinion on falsity or consumer confusion.

## II.   DISCUSSION

"Pennsylvania common law [] for unfair competition through deceptive marketing is 'identical to the Lanham Act without the federal requirement of interstate commerce.'" *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329, 343 n.75 (E.D. Pa. 2018) (quoting *Diodato v. Wells Fargo Ins. Servs.*, 44 F. Supp. 3d 541, 571-72 (M.D. Pa. 2014)). To establish a claim for false advertising under the Lanham Act, a claimant must prove:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

---

[1] Whether Downey will be permitted to testify as a lay witness as to matters relating to sound insulation, tire and rubber recycling, chemical engineering, and other specialized fields in which he may have experience, is an open question at this juncture. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1193 (3d Cir. 1995); *see also* F.R.E. 701 cmt. 2000 Amendments; *Estate of Edward W. Knoster v. Ford Motor Co.*, 200 F. App'x 106, 111 n.3 (3d Cir. 2006).

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (quoting

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011)).  "A

plaintiff can prevail in a false advertising action if it proves that the advertisement 'is either

(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers.'"

*Id*. (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.

Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).  "Proof of literal falsity relieves the plaintiff of its burden

to prove actual consumer deception."  *Id*.; *see also Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939,

943 (3d Cir. 1993) ("[A] plaintiff must prove *either* literal falsity or consumer confusion, but not

both") (emphasis in original); *Accu-Sort Sys., Inc. v. Lazerdata Corp.*, 820 F. Supp. 928, 930 n.4

(E.D. Pa. 1993) ("If a statement in an advertisement concerning a product is false on its face … a

plaintiff need not demonstrate adverse impact on the buying public (elements 2 and 3)." (citing

*Castrol*, 987 F.2d at 943)).[2]

      "A 'literally false' message may be either explicit or 'conveyed by necessary implication

when, considering the advertisement in its entirety, the audience would recognize the claim as

readily as if it had been explicitly stated.'"  *Groupe SEB USA*, 774 F.3d at 198 (quoting *Novartis*,

290 F.3d at 586-87).  "Unless the claim is unambiguous, however, it cannot be literally false."

*Id*.  "'The greater the degree to which a message relies upon the viewer or consumer to integrate

its components and draw the apparent conclusion … the less likely it is that a finding of literal

falsity will be supported.'"  *Id*. at 198-99 (quoting *Novartis*, 290 F.3d at 587).

      "The type of proof needed to prove literal falsity varies with the type of advertising claim

being made."  *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 467

---

[2] "Literal falsity" and "facial falsity" are one and the same.  *See Design Resources, Inc. v.
Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015).

(D.N.J. 2009) (citing *Novartis*, 290 F.3d at 586-87; *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992)); *Accu-Sort*, 820 F. Supp. at 932.  For example, "'[w]here the defendant's advertisement claims that its product is superior, plaintiff must affirmatively prove defendant's product equal or inferior.  Where … defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited.'"  *Accu-Sort*, 820 F. Supp. at 932 (quoting *Castrol*, 977 F.2d at 63).

Whether expert testimony is necessary to a plaintiff's claim of literal falsity is also case specific.  *See, e.g.*, *Mun. Rev. Serv., Inc. v. Xspand, Inc.*, 700 F. Supp. 2d 692, 702 (M.D. Pa. 2010) ("[I]t is axiomatic that to prove the falsity of [a statement by a purchaser of delinquent tax liens that certain tax-lien transactions were recorded as debt, rather than revenue], plaintiff must proffer expert testimony"); *Accu-Sort*, 820 F. Supp. at 931 (suggesting that expert opinion on whether statement is deceptive is unnecessary if the statement is "facially false").  In *Accu-Sort*, the plaintiff alleged that the defendant violated the Lanham Act when it made false and misleading statements about the plaintiff's barcode-reading laser scanner in a brochure.  *Id.* at 928-29.  Specifically, the brochure stated that the plaintiff's technology was "dangerous" because of its "increased risk of mis-reads" and "loss of redundancy."  *Id.* at 929.  The defendant moved for summary judgment, arguing that there was no evidence that the statement in the brochure was false.  In response, the plaintiff submitted an affidavit from its manager of research and development, asserting that the defendant's statement was false and misleading because all laser scanners are subject to misreads and the plaintiff's scanners did not suffer from a "loss of redundancy."  *Id.* at 930-31.  The court held that although the plaintiff's proffer was "somewhat tenuous," it did create a genuine issue of fact as to whether the defendant's statement was

misleading or facially false.  *Id*. at 931.  The plaintiff also submitted an expert affidavit

contending that the defendant's statement was deceptive, but the court determined that it was

unnecessary to consider the merits of the expert affidavit because the plaintiff's non-expert

affidavit already created an issue of fact.  Furthermore, even if the plaintiff could not prove

consumer deception, it was entitled, at the very least, to proceed to trial on a facial falsity theory.

*Id*.

Plaintiff asserts that because Pliteq "cannot meet the standard for literal falsity," Pliteq

must prove consumer deception to succeed on its Lanham Act and unfair competition claims.

(Pl. Br. at 4, ECF No. 99-3.)  Plaintiff further asserts that to prove consumer deception, Pliteq

would need expert testimony or a consumer survey, which it does not have.  (*Id*.)  We reject

these conclusory assertions.  First, it is not clear that Pliteq is unable to prove literal falsity.  The

allegedly false statements made by Plaintiff were that:  (1) Plaintiff's products and Pliteq's

products are equivalent with respect to quality, performance, and testing; (2) Pliteq's products

have an unpleasant odor because they use a cleaning method involving sulfur; and (3) Plaintiff

came up with the method of using two layers of floor underlayment.  (*See* Counterclaims ¶¶ 168-

69, 178, ECF No. 50.)  Plaintiff asserts that a product comparison in this case "requires scientific

or technical knowledge not appropriate for a lay witness." (Pl. Br. 5, ECF No. 99-3.)  This may

be true in some cases.  However, Plaintiff has not explained why that is true here.  Moreover,

Plaintiff's allegedly false statements do not refer to any scientific tests and do not otherwise

contain such technical implications that expert testimony would be needed to establish their

falsity.  To the contrary, information regarding a product's odor and who came up with an idea is

perfectly amenable to lay testimony.

Second, even if Pliteq were unable to prove literal falsity, it could potentially prove consumer deception without an expert or consumer survey.  "A plaintiff attempting to establish the second kind of falsehood, that an advertisement is literally true but misleading, must 'present evidence of deception' in the form of consumer surveys, market research, expert testimony, *or other evidence*."  *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1261 (11th Cir. 2004) (emphasis added) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)).[3]  Although the Third Circuit recognizes that the success of a deception claim "usually turns on the persuasiveness of a consumer survey," *see Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129-30 (3d Cir. 1994), that does not mean that a claimant could never prevail without a consumer survey.  *See Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990) ("[A] plaintiff must produce consumer surveys *or some surrogate therefor* to prove whether consumers expect an advertising claim to be substantiated and whether they expect the level of substantiation to be greater than that which the defendant has performed.") (emphasis added); *but see Castrol*, 987 F.2d at 951 (Roth, J., dissenting) ("The only exception to the burden to prove that an advertisement is misleading through consumer survey evidence is if the advertisement is 'literally false.'").

We decline to determine on a motion *in limine*, and without a full evidentiary record, that Pliteq will be unable to succeed on its deceptive marketing and unfair competition claims

---

[3] We recognize that some courts are more receptive to non-consumer survey evidence only for purposes of a preliminary injunction.  *See, e.g., Parks, LLC v. Tyson Foods, Inc.*, No. 15-946, 2015 WL 4545408, at *10 (E.D. Pa. July 28, 2015); *QVC, Inc. v. Your Vitamins, Inc.*, 714 F. Supp. 2d 291, 299 (D. Del. 2010), *aff'd by* 439 F. App'x 165 (3d Cir. 2011).  *Hickson*, however, was a summary judgment case and did not make that distinction.

without an expert or consumer survey evidence.  We likewise decline to prohibit Pliteq from attempting to prove its claims via lay witnesses.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff Ecore International, Inc.'s Motion *in Limine* No. 8 will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/ R. Barclay Surrick**
**R. BARCLAY SURRICK, J.**